**In re James R. BUSH, Debtor.**

**James R. BUSH, Plaintiff,**

**v.**

**NATIONSBANK, N.A., Defendant.**

**Bankruptcy No. 7–93–01892–HPA–13. Adv. No. 7–93–00196.**

United States Bankruptcy Court, W.D. Virginia, Abingdon Division.

March 11, 1994.

70

John M. Lamie, Browning, Morefield, Lamie & Sharp, Abingdon, VA, for debtor/plaintiff.

John E. Kieffer, Woodward, Miles & Flannagan, Bristol, VA, for defendant.

## MEMORANDUM OPINION
## AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

James R. Bush ("Debtor") filed this adversary proceeding against Nationsbank, N.A. ("Bank"), on October 5, 1993 to recover damages and seeks sanctions against Bank for violating the automatic stay under 11 U.S.C. § 362(h). Debtor alleges Bank violated the automatic stay when Debtor's 1986 Ford pick-up truck was sold post-petition. Bank contends that it had no knowledge or notice of the Debtor's bankruptcy. This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (2). For the reasons stated hereafter, this Court finds Bank did violate the automatic stay and awards the Debtor damages and costs with sanctions.

Bank held a lien on Debtor's 1986 Ford pick-up truck with a claimed balance by Bank at hearing of $1,669.00; however, it is not clear what was due, if any, at repossession. Bank repossessed the truck during the late night hours on August 31, 1993, without Debtor's knowledge. Subsequently, on September 17, 1993, Debtor filed a Chapter 13 petition in this Court, with notice being sent to all creditors, including Bank at its correct address. Although Debtor maintained his loan at Bank's Lee Highway branch in Bristol, Virginia, the Bank required notice to be sent to its Greensboro, North Carolina, facilities to be eventually routed to their "bankruptcy division," located in a separate facility in Greensboro. The notice of the filing in this Court was mailed by the clerk of this court to the correct address. Debtor's Plan, filed with his petition, included provisions for payment of Bank and reclaiming his truck. While the evidence shows the truck is valued at $7,000.00, Bank sold the truck at a private automobile dealer sale for the amount of $4,100.00 on September 22, 1993. Debtor never received notice of this sale due to Bank's use of an incorrect address for Debtor, which Debtor had not used and Bank's branch at Bristol apparently knew of this unused address for more than six years.

As an initial matter, the Court notes that the Bankruptcy Code generally is to be liberally construed in favor of the debtor. *See Williams v. USF & G,* 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Gleason v. Thaw,* 236 U.S. 558, 560, 35 S.Ct. 287, 288, 59 L.Ed. 717, 719 (1915); *Roberts v. W.P. Ford & Son Inc.,* 169 F.2d 151, 152 (4th Cir.1948) (citing *Johnston v. Johnston,* 63 F.2d 24, 26 (4th Cir.1933) and *Lockhard v. Edel,* 23 F.2d 912, 913 (4th Cir.1928)). This universally recognized principle serves to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted). This same "honest but unfortunate debtor" is thus provided with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. 279, 286, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764, 765 (1991); *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233, 241 (1971); *Local Loan Co. v. Hunt,* 292 U.S., at 244; *Johnston v. Johnston,* 63 F.2d, at 26; *Royal Indemnity Co. v. Cooper,* 26 F.2d 585, 587 (4th Cir.1928).

This Court, upon trial of this matter, heard the evidence including the testimony of the witnesses. It observed the candor, demeanor, truthfulness, and forthright testimony of witnesses as well as their credibility and makes the findings and conclusions herein.

11 U.S.C. § 362 provides for an automatic stay of any lien enforcement against the property of the debtor or the bankruptcy estate. The stay is broad and is effective against secured creditors in possession of collateral. *2 Collier on Bankruptcy* ¶ 362.04(4) (15th ed.1993). This stay is effective upon the date of the filing of the petition and formal service of process is not required. *Id.* at ¶ 362.03. When knowledge of the bankruptcy filing has been communicated to a potential claimant, actions taken in spite of this knowledge are deemed "willful" actions. *In re Colon,* 102 B.R. 421, 429 (Bankr. E.D.Pa.1989); *See also, In re Wagner,* 74

B.R. 898, 903 (Bankr.E.D.Pa.1987). An individual injured by any willful violation of a stay shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(h); *See also, Budget Service Co. v. Better Homes of Virginia,* 804 F.2d 289, 293 (4th Cir.1986).

The need and purpose of § 362 is clearly set forth in the congressional reports as follows:

House Report (Reform Act of 1978)

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

. . . .

The provisions in the current Bankruptcy Act for a stay of actions against the debtor and his property upon the commencement of a bankruptcy, reorganization, or repayment plan case are inadequate, both from the standpoint of the debtor, who needs the protection that the automatic stay provides, and of the creditor against whom the stay is applied, who needs relief from the stay when collateral may be deteriorating in value. The Rules of Bankruptcy Procedure have filled in the gap partially by providing an automatic stay. The stay is an important aspect of bankruptcy protection and is an element of the debtor's fresh start. For the consumer, the stay ceases all harassment by bill collectors; for the ailing business, the stay gives the business a breathing spell and time to work constructively with its creditors, or in the case of a liquidation, prevents some creditors from obtaining preferential treatment by quick action. The stay also presents a significant potential for harm of those against whom the stay is directed. Thus, the bill makes the stay statutory.

■ In the present case, notice of the filing of Debtor's petition was mailed by the clerk of this court to all creditors, including the Bank, at the appropriate box number and address. There is a presumption that the posting of a letter to the correct address with proper postage is evidence of delivery. The only evidence of non-delivery is a witness, Mr. Goad, an official with the Bank in Greensboro, who denied that he had personally received the notice. There is no evidence before the Court that the notice was not, in fact, delivered to the box number and received by representatives of the Bank and the Court file does not reflect that the notice was returned undelivered. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1937); *Hartford Fire Insurance Co. v. Mutual Savings and Loan Co.,* 193 Va. 269, 68 S.E.2d 541, 544 (1952); *See also,* 29 Am.Jur.2d *Evidence* § 194 (1967). That presumption has not been rebutted in this case and, thus, it is presumed that notice of Debtor's bankruptcy was delivered to representatives, employees, and agents of the Bank. As such notice was received, any action taken against the property of the Debtor or the bankruptcy estate was, under the facts of this case, a willful violation of the automatic stay. Therefore, under the facts, the sale of Debtor's truck post-petition violated 11 U.S.C. § 362 and Bank is subject to the provisions of 11 U.S.C. § 362(h).

In addition to the foregoing, the facts before this Court reflect that at the time of repossession in September 1993 the Debtor was not aware that he owed Bank a balance on the debt. Debtor had purchased the vehicle and financed same with Nationsbank's predecessor in 1986. Debtor was unable to learn, from inquiries directed to Bank personnel, what balance was claimed to be due the Bank. The day after the repossession, Debtor personally visited the Lee Highway branch where he had regularly transacted banking business for years and discussed the matter with employees there. These employees referred Debtor to locations in North Carolina without giving Debtor any telephone number to call or person to contact. Debtor, in an effort to contact Bank personnel in North Carolina, obtained a number from directory assistance. The only information Debtor could obtain was that the infor-

mation was not on a computer. Debtor left his name and phone number and was not called. He again contacted employees at Lee Highway branch who stated, "Well, someone will eventually call you."

The Debtor finally had two or three conversations with a Mr. Goad, an official with the Bank in Greensboro. Debtor informed Goad that he was disabled from working at present due to recent open heart surgery; that he didn't think he owed the Bank anything and that he would have no alternative but to file bankruptcy if he couldn't get the matter resolved. This conversation was about a week before the petition was filed in this Court. The only information given to Debtor that the truck had been sold was from Debtor's attorney several days following the filing of the petition. In addition to Goad, Debtor discussed his efforts to resolve the matter with at least two employees at the Lee Highway branch, a Mr. Rohrer and a Mr. Suggs. These employees apparently were fully familiar with the Debtor's problems, having been a customer for many years at this Lee Highway branch.

The evidence before this Court clearly shows that not only Goad and the employees at the Lee Highway branch knew of the Debtor's efforts to resolve this matter and if not resolved, he would file a bankruptcy petition in this Court, but others that Debtor contacted in North Carolina were so informed. These employees, agents of the Bank, were fully informed of the Debtor's plans and that Debtor, in fact, did file his petition on September 17, 1993. Thereafter, without any effort on the part of any Bank official or employee to determine whether or not a petition had been in fact filed, the vehicle was sold on September 22, 1993 at a private dealer's auction for $4,100.00, when the Bank's alleged balance was only $1,600.00; and this amount apparently, for the most part, consists of expense of repossession, transportation, etc., of the vehicle.

▮▮▮▮ In addition to the violation of 11 U.S.C. § 362, under Virginia's Commercial Code, a secured party upon default may dispose of the collateral in a commercially reasonable manner upon reasonable notification to the debtor. Virginia Code Ann. § 8.9–504(3) (Michie, 1991). The Code imposes liability on a secured creditor who disposes of collateral without complying therewith and a debtor may recover losses due to creditor's noncompliance. *Id.* at § 8.9–507(1)[1]. Most Virginia courts have placed the burden of proving compliance with § 8.9–504 on the creditor. *See, In re Bishop,* 482 F.2d 381 (4th Cir.1973) (proof insufficient as a matter of law to secure a deficiency judgment in part because creditor failed to prove debtor received sufficient notice of the resale); *See also General Motors Acceptance Corp. v. Sears,* 13 U.C.C. Rep. Serv.2d 962, 1990 WL 283224 (1990).

As stated earlier, Debtor received no notification of the sale of his truck. Bank offered no proof that it had attempted to notify Debtor of the sale other than a letter sent to an incorrect address that Debtor had not used for six years, when, in fact, the personnel at the Lee Highway branch fully knew of Debtor's current address. Thus, Bank did not meet the burden of proof required and notice was insufficient under § 8.9–504(3). Therefore, it is highly questionable whether Bank's disposition of the truck complied with Virginia's Commercial Code. Because the sale of the truck realized more than the amount owed Bank but less than the value of the truck, Bank is not entitled to file a deficiency action but Debtor may recover any loss sustained by the sale not being conducted in a commercially reasonable manner. Virginia Code Ann. § 8.9–507(1).

The Bank's evidence indicates the vehicle was sold at a "Dealers' Auction." There are serious defects in such sale as an indication of the vehicle's value. The "Dealers' Auction," which is not described in the evidence, amounts to a private sale. The purchasing "dealer" paid $4,100.00 for a vehicle that he intended to make a profit on when resold. Based on this assumption, a value placed by the Debtor on his vehicle of $7,000.00 is reasonable.

---

1. Code of Virginia § 8.9–507(1) states, in part: "If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part."

From the foregoing, this Court finds that this Bank's employees possessed knowledge of the filing of Debtor's petition and acted with willful disregard of the stay of § 362; that the Bank willfully violated the automatic stay provisions of 11 U.S.C. § 362; and, as such, the Debtor is awarded $7,000.00, the value of the vehicle, as damages. Additionally, Debtor is awarded $3,000.00 damages and costs for time and expense incurred in this matter, as well as $1,500.00 attorney's fees, which the Court finds reasonable for services herein to the Debtor.

This Court additionally imposes sanctions against the Bank in favor of the Debtor in the sum of $5,000.00, $4,000.00 of which shall be suspended upon payment of the foregoing sums in 10 days; and, further, if this Bank is hereafter before this Court and found to have committed violations of § 362, this matter shall be returned to the docket and an order entered directing full payment of the same with interest as provided by law. *See Better Homes of Va., supra.*

Service of a copy of this Order shall be made by mail to the Debtor; counsel for Debtor/Plaintiff; counsel for Defendant; Trustee; and U.S. Trustee.