**In re James R. BUSH, Debtor.**

**NATIONSBANK, N.A., Appellant,**

**v.**

**James R. BUSH, Appellee.**

Civ. A. No. 94–59–A.
Bankruptcy No. 7–93–01892–HPA–13.

United States District Court,
W.D. Virginia,
Abingdon Division.

June 29, 1994.

at all must be insufficient to bar a claim by confirmation of plan of reorganization.

John Ellsworth Kieffer, Woodward, Miles & Flanagan, Bristol, VA, for Nationsbank, N.A.

John M. Lamie, Browning, Morefield, Lamie & Sharp, P.C., Abingdon, VA, for James R. Bush.

### *MEMORANDUM OPINION*

TURK, District Judge.

This case is before the court on appeal from a memorandum opinion and order entered by The Honorable H. Clyde Pearson, United States Bankruptcy Judge, finding that the appellant willfully violated the automatic stay provisions of 11 U.S.C. § 362 and awarding damages to the appellee. *Bush v. Nationsbank, N.A. (In re James R. Bush),* 166 B.R. 69 (Bankr.W.D.Va.1994). Upon careful consideration of the record, the applicable law, and the briefs submitted by counsel, the court finds that the judgment of the Bankruptcy Court must be reversed.

### I. *BACKGROUND*

■ Nationsbank held a lien on Mr. Bush's 1986 Ford truck, which Nationsbank repossessed on August 31, 1993 because Mr. Bush was delinquent in his loan payments.

On September 7, 1993, Nationsbank sent Mr. Bush a letter [1] stating,

> You are hereby notified that we will hold this collateral for ten (10) days from the date of this letter. If you have not redeemed said collateral within this time period we will dispose of said collateral as soon thereafter as possible by private sale....

The letter contained the name and toll-free phone number of Mr. Dean Goad, a Nationsbank employee in Greensboro, North Carolina. On September 17, 1993, Mr. Bush filed a Chapter 13 petition with the Bankruptcy Court. On September 20, 1993, the Clerk of the Bankruptcy Court in Roanoke, Virginia mailed notices of the bankruptcy filing. Nationsbank was listed on the "mailing matrix" as a creditor and a notice was sent to Nationsbank in Greensboro.

On September 22, 1993, Nationsbank sold the truck at the Greensboro Auto Auction for $4,100.00. On October 5, 1993, Mr. Bush filed a complaint in the Bankruptcy Court alleging that Nationsbank had willfully violated the automatic stay (Adversary Proceeding No. 7–93–00196). A hearing was held on November 23, 1993 and the Bankruptcy Court issued its opinion and order on March 11, 1994. In its opinion, the Bankruptcy Court stated,

> [T]his Court finds that this Bank's employees possessed knowledge of the filing of Debtor's petition and acted with willful disregard of the stay of § 362; that the Bank willfully violated the automatic stay provisions of 11 U.S.C. § 362; and, as such, the Debtor is awarded $7,000.00, the value of the vehicle, as damages. Additionally, Debtor is awarded $3,000.00 damages and costs for time and expenses incurred in this matter, as well as $1,500.00 attorney's fees, which the Court finds reasonable for services herein to the Debtor. This Court additionally imposes sanctions against the Bank in favor of the Debtor in the sum of $5,000.00, $4,000.00 of which shall be suspended upon payment of the foregoing sums in 10 days; and, further, if this Bank is hereafter before this Court and found to have committed violations of § 362, this matter shall be returned to the docket and an order entered directing full payment of the same with interest as provided by law.

166 B.R. at 74.

## II. *ANALYSIS*

Jurisdiction of the court is proper under 28 U.S.C. § 158(a), which states that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders and decrees ... of bankruptcy judges." This court has held that "[w]hen considering an appeal from the bankruptcy court, the District Court is constrained to accept the lower court's findings of fact unless they are clearly erroneous. The district court must, however, make an independent determination of the law." *Dobbins v. Frank Meador Buick, Inc. (In re Frank Meador Buick)*, 65 B.R. 200, 202 (W.D.Va.1986).

■ In its opinion, the Bankruptcy Court stated that "[w]hen knowledge of the bankruptcy filing has been communicated to a potential claimant, actions taken in spite of this knowledge are deemed 'willful' actions." 166 B.R. at 71 (citations omitted). Therefore, the sole issue for determination in this

---

1. In its opinion, the Bankruptcy Court found that Mr. Bush never received this letter "due to Bank's use of an incorrect address for Debtor, which Debtor had not used and Bank's branch at Bristol apparently knew of this unused address for more than six years." 166 B.R. at 71. The basis for this finding is Mr. Bush's testimony that he never received notice from Nationsbank that he owed money on the truck and that Mr. Goad told him such notices had been mailed to him at a post office box in Castlewood, Virginia. Mr. Bush stated, "I haven't lived in Castlewood in six years and I haven't had that address in six years." Transcript of November 23, 1993 hearing ("Transcript") at pp. 11–12. However, this testimony does not support the finding that the September 7, 1993 letter was sent to the wrong address. First, Mr. Bush was testifying about prior notices informing him that he still owed money on the truck. Second, the letter, which was entered into evidence at the hearing, contains Mr. Bush's correct Abingdon address. Therefore, the Bankruptcy Court finding that Mr. Bush did not receive this notice due to an incorrect address is clearly erroneous. As such, the Bankruptcy Court's finding that Nationsbank violated the Virginia Commercial Code by failing to provide proper notice of the sale is also clearly erroneous. *See* 166 B.R. at 73.

matter was whether Nationsbank received notice of the bankruptcy filing before the truck was sold. The Bankruptcy Court held that Nationsbank had received notice in two ways: from the Clerk of the Bankruptcy Court and from the debtor himself.

As to the notice mailed by the Clerk of Court, the Bankruptcy Court stated,

> In the present case, notice of the filing of Debtor's petition was mailed by the clerk of this court to all creditors, including the Bank, at the appropriate box number and address. There is a presumption that the posting of a letter to the correct address with proper postage is evidence of delivery. The only evidence of non-delivery is a witness, Mr. Goad, an official with the Bank in Greensboro, who denied that he had personally received the notice.[2] There is no evidence before the Court that the notice was not, in fact, delivered to the box number and received by representatives of the Bank and the Court file does not reflect that the notice was returned undelivered. That presumption has not been rebutted in this case and, thus, it is presumed that notice of Debtor's bankruptcy was delivered to representatives, employees, and agents of the Bank. As such notice was received, any action taken against the property of the Debtor or the bankruptcy estate was, under the facts of this case, a willful violation of the automatic stay.

166 B.R. at 72 (citations omitted).

In this finding, the Bankruptcy Court fails to acknowledge the difference between receipt of the notice in general and receipt of the notice before the truck was sold. While the fact that the notice was mailed to the proper address and was not subsequently returned undelivered may support the conclusion that Nationsbank received the notice, it does not support the conclusion that Nationsbank received the notice before September 22, 1993. As stated *supra*, the issue for determination was not *whether* Nationsbank *ever* received the notice, but *when* Nationsbank received the notice.

At the hearing, there were only two attempts to show when the notice might have been received by Nationsbank in Greensboro. In his opening statement, Mr. Bush's attorney stated that he received his notice in Abingdon on September 21, 1993. Transcript at p. 5. At the end of the trial, counsel for Nationsbank asked the court to take notice of the fact that the certain court documents were mailed from Abingdon on October 6, 1993 and received by Nationsbank in Greensboro on October 12, 1993. The court stated that this fact was irrelevant because the notice of the bankruptcy filing was mailed from Roanoke instead of Abingdon. Transcript at p. 54–55. There was no evidence presented by either side as to how long it normally takes a letter mailed from Roanoke to arrive in Greensboro. In other words, there was no evidence from which the Bankruptcy Court could have found that Nationsbank received the notice before the sale on September 22, 1993.

In addition to its findings concerning the notice, the Bankruptcy Court stated,

> The evidence before the Court clearly shows that not only Goad and the employees at the Lee Highway branch[3] knew of the Debtor's efforts to resolve this matter and if not resolved, he would file a bank-

---

**2.** It should be noted that this finding is not supported by the record. At the hearing, Mr. Goad testified that he had checked with the Bankruptcy Department, the Central Collections mail room, and the Virginia Collections department and that none of these departments had received the notice. Transcript at pp. 28 and 40. Furthermore, John Rohrer, an employee in the Nationsbank Bankruptcy Unit, testified that his unit did not receive notice of the bankruptcy filing until September 30, 1993 when Mr. Bush's attorney called him. Transcript at p. 46–47.

**3.** Specifically, the Bankruptcy Court found that the "Debtor discussed his efforts to resolve the

matter with at least two employees at the Lee Highway branch, a Mr. Rohrer and a Mr. Suggs." 166 B.R. at 73. Contrary to this finding, the transcript indicates that both Mr. Rohrer and Mr. Suggs were Nationsbank employees in *Greensboro*. Transcript at pp. 13–14 and 44–45. In fact, the only mention of discussions with the Lee Highway branch was Mr. Bush's testimony that after the truck was repossessed, he "talked with the people" at the Lee Highway branch and they told him "to call the Bankruptcy [department] in North Carolina." Transcript at pp. 9–10.

ruptcy petition in this Court, but others that Debtor contacted in North Carolina were so informed. These employees, agents of the Bank, were fully informed of the Debtor's plans and that Debtor, in fact, did file his petition on September 17, 1993. Thereafter, without any effort on the part of any Bank official or employee to determine whether or not a petition had been in fact filed, the vehicle was sold on September 22, 1993 at a private dealer's auction for $4,100.00 . . . .

166 B.R. at 73.

Therefore, the Bankruptcy Court found that Nationsbank was given notice of the bankruptcy filing by the debtor himself. However, this conclusion is contradicted by the evidence set forth at the hearing. Mr. Bush testified that he told Mr. Goad and someone else at Nationsbank that he might have to file for Bankruptcy. Transcript at pp. 13, 19–20. However, Mr. Bush also testified that he never told anyone at Nationsbank that he had actually filed a bankruptcy petition and that he did not talk to anyone at the Lee Highway branch after the petition was filed. Transcript at pp. 13, 20 and 23.[4] Mr. Goad testified that Mr. Bush never mentioned filing bankruptcy. Transcript at pp. 25 and 33. Furthermore, Mr. Goad testified as to the standard procedures involved if a customer mentions filing bankruptcy. Transcript at p. 33–35. Therefore, there was simply no evidence to support the conclusion that Nationsbank employees were "fully informed . . . that [the] Debtor, in fact, did file his petition on September 17, 1993." 166 B.R. at 73.

It is essential that Nationsbank have notice of the bankruptcy filing before it could willfully violate the automatic stay. After reviewing the hearing transcript, the court finds no evidence to support the conclusion that Nationsbank received notice of the bankruptcy filing from any source before the sale on September 22, 1993. Therefore, the Bankruptcy Court's finding that Nationsbank willfully violated the automatic stay is clearly erroneous and must be reversed.

4. Also, Mr. Bush's attorney apparently did not attempt to contact anyone at Nationsbank until September 30, 1993, thirteen days after the peti-

### III. CONCLUSION

For the reasons stated, the court finds that the judgment of the Bankruptcy Court must be **REVERSED**. This matter is **REMANDED** to the Bankruptcy Court with directions to enter judgment for Nationsbank and to dismiss the appellee's complaint with prejudice.

tion was filed and eight days after the truck was sold. Transcript at p. 46.