**In re Jerry R. RATLIFF and Tiffney L. Ratliff, Debtors.**

No. 00–4720–3F3.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Aug. 23, 2000.

Robert H. Wood, P.A., Jacksonville, FL, for Debtors.

Eric L. Leach, Milton, Leach & D'Andrea, P.A., Jacksonville, FL, for Paxon Motors, Inc.

Mamie L. Davis, Jacksonville, FL, trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Motion for Sanctions Pursuant to 11 U.S.C. § 362 filed by Jerry R. Ratliff and Tiffney L. Ratliff ("Debtors") on June 29, 2000 (Doc. 10). After a hearing on this Motion on August 2, 2000, the Court took this matter under advisement. Upon review of the evidence presented and of the arguments and submissions of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On July 27, 1999, Debtors purchased a 1990 Chevy Blazer ("vehicle") from Paxon Motors, Inc. ("Paxon") with purchase money financing from Paxon. Paxon retained a security interest in the vehicle.

On December 10, 1999, Debtors voluntarily filed their first Chapter 13 bankruptcy petition, Case No. 99–09436–3P3. Paxon's president, Mr. Barrows, testified at trial that Debtors, at the time of their first

filing, had fallen $3,000 behind in payments on the vehicle. Debtors had no equity in the vehicle.

On June 15, 2000, the Court dismissed Debtors' first Chapter 13 Case because Debtors failed to timely file certifications that their Chapter 13 plan could be confirmed.[1] Upon receiving notice of the dismissal on the afternoon of June 20, Debtors drove the vehicle to their attorney's office to prepare to file a second Chapter 13 petition. Paxon received notice of the dismissal of Debtors' first Chapter 13 case on the morning of June 20.

At approximately 4 p.m. on June 20, 2000 Paxon lawfully repossessed the vehicle from Debtors' attorney's parking lot and delivered it to the Jacksonville Auto Auction within minutes thereafter, without recourse and without reservation. Debtors subsequently filed their second Chapter 13 petition.[2]

Debtors assert that within ten minutes of Debtors' second filing, Debtors' attorney's secretary, Ms. Angell, called Paxon and told Mr. Barrows that Debtors had filed bankruptcy again. At approximately 5:20 p.m. on June 20, 2000, Ms. Angell personally delivered a copy of Debtors' second filing to Paxon. Mr. Barrows told Ms. Angell that Jacksonville Auto Auctions had already sold the vehicle.

Debtors contend that the vehicle had not been sold pre-petition as the auto auction did not begin until 6:00 p.m. on June 20, 2000, some 45 minutes after Ms. Angell personally notified Mr. Barrows that Debtors filed their second petition. Paxon contends that the vehicle was completely disposed of upon delivery to Jacksonville

---

1. The General Order of August 1, 1990, as amended March 8, 1991, requires that a Chapter 13 debtor file such certifications within 160 days of filing a petition.

2. Debtors failed to present any evidence at trial to contradict Paxon's assertion that the vehicle was delivered to the auctioneer before Debtors filed the second petition.

Auto Auctions sometime before the second filing.[3]

On June 29, 2000, Debtors filed a Motion for Sanctions Pursuant to 11 U.S.C. § 362(h), which provides for sanctions for violations of the automatic stay.

### CONCLUSIONS OF LAW

■ Under 11 U.S.C. § 362(h), the Court may grant actual damages, costs and fees, and punitive damages to any individual injured by a willful violation of the automatic stay. Debtors argue that Paxon willfully violated the automatic stay by acting to foreclose their lien on the vehicle after Debtors' second petition for bankruptcy was filed. Debtors also contend that Paxon conducted the sale of the vehicle in a commercially unreasonable manner, thus violating Florida Statutes § 679.504.

### DEBTORS' CLAIM FOR SANCTIONS UNDER 11 U.S.C. § 362(H)

■ The Court first addresses Paxon's specious contention that Debtors had no rights in the vehicle once repossessed. The bankruptcy estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 208, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The determination of whether the property was in fact "property of the debtor" is a question of state law. *See Southtrust Bank of Alabama v. Thomas (In re Thomas),* 883 F.2d 991, 995 (11th Cir.1989).

Paxon contends that, under the Court's interpretation of Florida law in *In re Burnsed,* 224 B.R. 496 (Bankr.M.D.Fla. 1998), the repossession completely eradi-cated Debtors' interest in the vehicle. Paxon's reliance on the *Burnsed* decision is misplaced. *Burnsed* involved default on a title loan rather than a purchase-money loan such as the debt in the instant case. *See Id.* Title loans differ greatly from ordinary secured obligations. *See Id.* The Florida statutes classify title lienors as "secondhand dealers," thereby grouping title lienors with pawn shops and recycled metal dealers. *See* § 538.03 et seq., Fla. Stat. (2000). Therefore the rules governing the destruction of a debtor's interest in property differ depending on whether the creditor's security is borne by the title, as in *Burnsed,* or by the vehicle itself, as in the instant case. The title loan statute affords the debtor considerably less protection than the UCC. *See Burnsed,* 224 B.R. at 499. The *Burnsed* holding is limited to situations where the title to a vehicle is pledged. The instant case is not governed by *Burnsed* or by Chapter 538, but by Florida's enactment of the Uniform Commercial Code and by the Florida motor vehicle title certificate statute.

■ Florida Statutes § 679.504 and § 679.505 support the proposition that a debtor in bankruptcy, and thus the debtor's bankruptcy estate, maintains legal title to the vehicle even if a creditor repossesses the vehicle prepetition. *See In re Iferd,* 225 B.R. at 503 (Bankr.N.D.Fla. 1998). The *Iferd* court refused to follow the rule of *In re Lewis,* 137 F.3d 1280 (11th Cir.1998) on the ground that *Lewis* was decided under Alabama law. *See Id.* at 503; *see also In re Littleton,* 220 B.R. 710, 714 (Bankr.M.D.Ga.1998) (rejecting the rule of *Lewis* in Georgia on identical grounds). The *Iferd* court found that Florida law on title after repossession is governed by the UCC, while Alabama law

---

**3.** Debtors failed to present any evidence to contradict Paxon's assertions as to the timing of the handover to the auctioneer or as to the effect of that assignment. The Debtors bore the burden of proof on this issue.

is guided by the common law of conversion. *See Id.* The *Iferd* court found that the UCC, and thus Florida law, preserves legal title in a debtor's bankruptcy estate despite a prepetition repossession. *See Id.*

■ Additionally, Florida's motor vehicle title statute, § 319.22, provides that title to a repossessed car remains in the debtor until the vehicle is sold and a new certificate of title is issued. *See In re Chiodo*, 250 B.R. 407, 409 (Bankr.M.D.Fla. 2000). The *Chiodo* Court explicitly held that the rule of *Lewis* does not apply in the Middle District of Florida. *See Id.* at 411.

■ Paxon's contention that prepetition repossession of a vehicle in which a Chapter 13 debtor has no equity vitiates a potential violation of the automatic stay lacks merit. Therefore, Debtors had a property interest in the vehicle such that foreclosure upon the vehicle may constitute a violation of the automatic stay. The Court proceeds to tackle the central issue of this dispute: whether or not Paxon willfully violated the automatic stay by disposing property of the estate after the Debtors filed their second petition, which triggered the automatic stay.

■ Debtors argue that Paxon willfully violated the automatic stay by performing an act to collect on Paxon's interest in the vehicle after a bankruptcy petition was filed. The Court recognizes the question as one of duty and breach. In certain circumstances, a creditor in possession of repossessed property is under a duty to prevent disposition of the property or, in some cases, to affirmatively return property to the Debtor. Failure to do so willfully, with knowledge of a debtor's filing, constitutes a breach of this duty and may give rise to damages.

The question of whether a duty exists hinges on the timing of the repossession and on the timing of final disposition of the collateral. Courts generally divide these cases into three fact patterns.

■ First, if a creditor lawfully repossesses collateral prepetition and sells the collateral after having received notice of a debtor's petition for bankruptcy subsequent to the repossession but prior to final disposition, then the creditor willfully violated the automatic stay and is liable to the debtor for damages. *See Nationsbank v. Bush (In re Bush)*, 169 B.R. 34, 36 (W.D.Va.1994). If a creditor unlawfully repossesses collateral post-petition without knowledge of the petition and subsequently sells or holds the collateral after being given notice, then creditor willfully violated the automatic stay and is liable to debtor for damages. *See In re Wright*, 75 B.R. 414, 415 (M.D.Fla.1987).

■ However, if a creditor lawfully repossesses collateral and disposes of the collateral completely to another prepetition, then creditor has not violated the automatic stay at all. *See Brown v. Joe Addison, Inc. (In re Brown)*, 210 B.R. 878, 881 (Bankr.S.D.Ga.1997). Such a creditor never had any duty not to dispose of the collateral as the entire transaction occurred prepetition.

■ The evidence shows that Paxon repossessed the vehicle before Debtors filed their second petition. Paxon did not violate the automatic stay by doing so and thus had no duty to refrain from or prevent future disposition at this juncture. Therefore, Paxon would not have a duty to refrain from cashing in on the seized collateral unless a debtor filed a petition before disposition. Without this duty, the disposition is not actionable under § 362(h).

■ The dispositive question, then, is when did Paxon dispose of the vehicle?

In order for Paxon to be under a duty not to dispose of the vehicle such that sanctions could be imposed for doing so, two conditions must be present: 1. A petition must have been filed before disposition; and 2. Paxon must have been on notice when vehicle was disposed of. If Paxon disposed of the car post-petition, Paxon had a duty to stay or prevent disposition of the vehicle, because the automatic stay had been violated. If Paxon knew of the petition (and thus its duty to protect the new estate's interest in the vehicle) when it disposed of the car, then a duty arose to respect the stay. Therefore, Debtors bear the burden of establishing that Paxon had not disposed of the vehicle before their petition was filed and that Paxon knew of the petition before disposition.

Debtors failed to carry the initial burden. Debtors introduced no evidence or legal authority to contradict Paxon's claim that the vehicle was completely disposed of when it was assigned to Jacksonville Auto Auction without recourse or reserve. Essentially, Debtors' failed to show that Paxon exercised dominion over property of the estate after the petition was filed. The automobile was property of the estate until sold by Jacksonville Auto Auctions. *See Chiodo*, 250 B.R. at 409. The question of whether or not the assignment of property of the estate by Paxon and the sale of property of the estate by the auctioneer were proper under Florida law is not before the Court at this time. The only relevant issue before the Court is whether **Paxon** exercised control over the vehicle at any moment post-petition. The Court finds that Paxon disposed of the vehicle completely upon assigning the vehicle over to the auctioneer without recourse and without reservation. At that point, Paxon no longer exercised dominion over the vehicle, as it could not retrieve the vehicle from the auctioneer. Debtors had the burden of showing that Paxon performed some act of control over the vehicle post-petition. Debtors failed to come forward with any evidence on this point.

Therefore, the timing of the final sale of the vehicle is irrelevant in a proceeding for sanctions against Paxon for violation of the automatic stay unless Debtors bring evidence to show that the time of sale, rather than the time of assignment, is dispositive. Debtors failed to bring forward any evidence to show that Paxon maintained some dominion over the vehicle until sale by the auctioneer. The assignment of the vehicle to the auctioneer without recourse and without reservation constitutes evidence of complete disposition by Paxon. Plaintiff failed to controvert this evidence.

Therefore, the Court concludes from the evidence presented that Paxon completely disposed of the vehicle before Debtors filed their second petition and gained protection of the automatic stay.

Because Debtors failed to satisfy the first element of a § 362(h) sanctions claim, the Court need not inquire as to the second element—whether such a violation was "willful." Paxon had no duty to refrain from or to prevent disposition of the car because the petition had not been filed until after Paxon had completely disposed of the car.

### DEBTORS' CLAIM FOR DAMAGES UNDER FLORIDA STATUTES § 679.504

 Debtors argue that Paxon's rapid foreclosure on the vehicle in general, and Paxon's failure to notify Debtors of the sale in particular, violate Florida Statutes § 679.504. Such claims are best heard in the context of an adversary hearing rather than in the midst of a non-adversary automatic stay dispute. *See Koresko v. Chase Manhattan Fin. Services, Inc. (In re Koresko)*, 91 B.R. 689 (Bankr.

E.D.Pa.1988). Under Florida law, suits for violation of § 679.504 are enforced against any deficiency judgment the creditor may be entitled to and are not the basis for bankruptcy remedies such as sanctions for violation of the automatic stay. *See BancFlorida v. De Pasquale (In re De Pasquale)*, 166 B.R. 663 (Bankr. N.D.Ill.1994) (Illinois bankruptcy court interpreting Florida § 679.504 in context of objection to discharge).

The Court does not make any judgments as to the reasonability of Paxon's behavior by refusing to address this claim at present. Paxon's conduct since Debtors' first bankruptcy does give the Court pause. One wonders how endangered the consumer bankruptcy system would become if all secured creditors had the sort of well-oiled repossession-and-sale machine that Paxon utilized. However, the Court cannot use a non-adversary motion for sanctions to punish a creditor for protecting its interests as effectively and efficiently as possible without finding that that creditor violated the automatic stay. The only relevant issues in a § 362(h) are the timing of acts to collect and the creditor's knowledge of a debtor's petition.

## CONCLUSION

Based upon the evidence presented, the Court finds that Paxon did not violate the automatic stay. The Court does not address Debtors' claim for damages under Florida Statutes § 679.504 as it is not properly before the Court.

The Court will separately enter an order denying Debtors' Motion for Sanctions in accordance with these Findings of Fact and Conclusions of Law.