**In re CONTINENTAL AIRLINES, INC., et al.**

**CONTINENTAL AIRLINES, INC. and New York Airlines, Inc.**

**v.**

**FIRST SECURITY BANK OF UTAH, N.A., JetStream, L.P. and JetStream II, L.P.**

**Bankruptcy Nos. 90–932 through 90–984. Adv. No. 92–52.**

United States Bankruptcy Court, D. Delaware.

Aug. 25, 1992.

Edward B. Maxwell, 2nd, James L. Patton, Jr., Laura Davis Jones, Bhavana Sontakay, Wilmington, Del., for Continental Airlines, Inc.

Todd V. Jones, Wilmington, Del., for First Fidelity.

T. Jay Thompson, Continental Airlines, Inc., Houston, Tex., for debtors.

HELEN S. BALICK, Bankruptcy Judge.

Continental Airlines, Inc. and New York Airlines, Inc. (Plaintiffs or Debtors) have filed an adversary action seeking disbursement from a reserve account controlled by First Security Bank of Utah, N.A., JetStream, L.P., and JetStream II, L.P. (collectively Defendants). 11 U.S.C. § 542(b). Defendants dispute Plaintiffs' right to the disbursement and this court's ability to render a final order in the allegedly non-core dispute. Bankr.R. 7008; *Beard v. Braustein*, 914 F.2d 434, 443–44 (3d Cir.1990). The matter is set for trial on August 27, 1992. Plaintiffs filed a timely motion seeking a pre-trial determination of the nature of the action. 28 U.S.C. § 157(c)(1). For the reasons that follow the court holds that the turnover action is core.

Plaintiffs assert a right to $945,000 out of six million dollars held in a reserve account established by the Debtors under the terms of an aircraft lease between New York Airlines (lessee) and JetStream, L.P. (lessor) with First Security Bank as owner trustee under the lease. The reserve account was set up to reimburse the lessee for certain maintenance expenses incurred during the term of the lease and compensate the lessor at the end of the lease in the event the aircraft do not meet certain minimum return conditions. Disbursements are under the control of the Defendants. The Debtors receive the accrued interest on the fund.

Section 542(b) provides in pertinent part:

[A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

■ The Debtors claim they hold a matured debt, by virtue of the fact that the maintenance work has already been performed on the aircraft. The Debtors have an equitable interest in the reserve fund, by virtue of their rights under the lease, which is property of the estate. 11 U.S.C. § 541(a)(1).

■ Is the turnover action core or non-core? 28 U.S.C. § 157(b)(2). If the action is core, the bankruptcy court can enter a final order; if non-core, the bankruptcy court is limited to submitting proposed findings of fact and conclusions of law to the District Court. 28 U.S.C. §§ 157(b)(1) & (c)(1).

The Court of Appeals for the Third Circuit has set forth the test a bankruptcy court must use to determine whether a matter is core. *Beard v. Braustein*, 914 F.2d 434 (3d Cir.1990). In *Beard* a chapter 7 trustee brought a turnover action against the debtor's lessee to recover unpaid pre-petition and post-petition rents accrued under a lease entered into pre-petition. On appeal, the Third Circuit held that the matter was entirely non-core. 914 F.2d at 445. The underlying basis for the holding was that even if the action was brought under one of the specific categories of core proceedings listed in section 157(b)(2) of Title 28, *Northern Pipe Line Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 89, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982), required a closer look at the nature of the

**536**

underlying claim. *Beard,* 914 F.2d at 443–44. The trustee's action was held to be non-core because it was "a garden variety contract claim and is not against the bankruptcy estate." *Id.* at 444 (citations omitted).

 Post–*Beard* cases in this Circuit have followed its language carefully, generally looking beyond the mere enumeration of the action as a core proceeding in section 157(b)(2) to verify that the action does indeed invoke "a substantive right provided by Title 11, or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Guilford Transp. v. Delaware & Hudson Ry. Co. (Matter of Delaware & Hudson Ry. Co.),* 122 B.R. 887, 895 (D.Del.1991) (quoting *Beard,* 914 F.2d at 444 (quoting *Matter of Wood,* 825 F.2d 90, 91 (5th Cir.1987))). In *Delaware & Hudson* the District Court found that the trustee's strong arm actions (brought under sections 542, 544(b), 547, 548 and 550) were core because they went "to the heart of this bankruptcy, i.e., the retrieval of assets." *Id.* The fact that the bankruptcy court would apply state law to resolve the actions did not make them non-core. *Id.* (citing 28 U.S.C. § 157(b)(3)).

Using the rational of *Delaware and Hudson,* the court finds that the Debtors' turnover action is core because it deals with the retrieval of assets of the estate. *See also Miller v. Printech Instant Ads (In re Lila, Inc.),* 133 B.R. 588, 590 (Bankr. E.D.Pa.1991) ("garden-variety" action by debtor to collect a liquidated pre-petition accounts receivable "may well be core").

 Debtors have argued in the alternative that the Defendants gave their implied consent to this court's entry of a final order in the event the court should determine the matter is non-core. Implied consent is not sufficient to waive constitutional jurisdiction requirements. *See* Bankr.R. 7008 advisory committee note. Any consent must be explicit and of record. The court notes with displeasure the if not unethical, at least unscrupulous, post-filing maneuvering detailed in the pleadings and affidavits. However, this does not and

cannot form the basis of an estoppel or an implied consent to jurisdiction.

IT IS SO ORDERED.