**In re Matthew J. CHIODO, Debtor.**

No. 99–09007–6J3.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Feb. 18, 2000.

Michael A. Paasch, Mateer & Harbert, P.A., Orlando, FL, for Debtor.

Larry M. Foyle, Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A., Tampa, FL, for Creditor.

Laurie K. Weatherford, Winter Park, FL, Chapter 13 Trustee.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON CREDITOR'S MOTION FOR RELIEF FROM AU-TOMATIC STAY*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on January 18, 2000, on the Motion to Terminate or Condition the Automatic Stay (the "Motion") (Doc. No. 5) filed by Tidewater Finance Company, Inc. (the "Creditor"), in the Chapter 13 bankruptcy case of Matthew J. Chiodo (the "Debtor"). Both parties submitted memorandums of law in support of their positions (Doc. Nos. 33 and 34).

The Creditor, who held a lien on the Debtor's car, had repossessed the car before this Chapter 13 case was filed. Creditor argues that, after repossession, the debtor lost any interest in the car and that the automatic stay should be modified to allow the Creditor to sell the repossessed vehicle. Conversely, Debtor argues that the automatic stay should remain in place because the Debtor is entitled to keep the vehicle pursuant to Sections 541(a)(1) and 542(a) of the Bankruptcy Code.[1] The Debtor argues that the vehicle is property of the estate; the Creditor disagrees. After reviewing the pleadings, memorandum of law, and considering the arguments of counsel and the applicable law, the Motion is denied.

The facts are undisputed. Debtor bought a used 1998 Honda Civic (the "Vehicle") on May 21, 1999. The Creditor received a security interest in the Vehicle after an assignment of the financing agreement and security interest from the original dealer. The security interest was properly perfected. Debtor made only one payment to the Creditor on July 15, 1999. Creditor's agent repossessed the Vehicle and gave the Debtor a Notice of Sale on October 14, 1999. Debtor filed this reorganization case under Chapter 13 of the Bankruptcy Code on October 29, 1999 (the "Petition Date"). The Creditor had not sold the Vehicle or obtained a new certificate of title on the Petition Date.

After the Chapter 13 case was filed, Creditor voluntarily returned the Vehicle to the Debtor (Doc. No. 35). The agreement between the parties provided that the Debtor could use the car as long as he maintained the Vehicle and kept adequate car insurance in place. Debtor also agreed to return the Vehicle to the Creditor if any one of several events occurred including the modification of the automatic stay. The Debtor has filed a Chapter 13 plan that pays the Creditor's claim in full albeit over time with interest. The Debtor is current in his payments under the Chapter 13 plan.

---

1. Unless stated otherwise, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

The facts raised in this case occur frequently. A debtor buys a car on credit and later defaults on payments. The creditor repossesses the car. Before resale of the car, the debtor files a reorganization case under Chapter 13 of the Bankruptcy Code. Upon the Chapter 13 filing, both the creditor and the debtor contend they have a superior right to the repossessed car.

The automatic stay provisions of Section 362 limit any act by a creditor to obtain or exercise control over "property of the estate," unless a court order modifying the automatic stay is entered. Bankruptcy Code Section 362(a)(1). As in this case, a creditor holding a repossessed car may file a motion to modify the automatic stay to proceed with a sale of the car. Alternatively, a debtor may file a motion seeking a court order directing the creditor to turnover the repossessed car to the debtor. Section 542 requires the return of any property that the debtor/trustee may use, sell, or lease under Section 363. In turn, Section 363(b)(1) provides that the debtor/trustee may use, sell, or lease "property of the estate." Therefore, regardless whether the creditor or the debtor seeks relief, the analysis is the same. Is the repossessed car property of the debtor's estate?

*Property of the Bankruptcy Estate.* Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case wherever located and by whomever held." Bankruptcy Code Section 541(a)(1). The United States Supreme Court's seminal decision in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) interpreted this definition broadly to include collateral subject to a security interest. "Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with 'adequate protec-

tion' for their interests." *Id.* at 203–04, 103 S.Ct. 2309.

■ In *Whiting Pools,* the Internal Revenue Service seized tangible personal property of a debtor pursuant to a federal tax lien. *Id.* at 200, 103 S.Ct. at 2311. The debtor then filed a Chapter 11 reorganization case. *Id.* The United States Supreme Court held that the seized property remained a part of the debtor's estate under Section 541. The Supreme Court noted, however, that the legislative history behind the broad statutory authority to include secured collateral as property of a bankruptcy estate did not include property in which the debtor has only a minor interest, such as property held in trust for another person. *Whiting Pools* at n. 10. Therefore, pursuant to *Whiting Pools,* a debtor may compel a secured creditor to return repossessed property provided the creditor's interests in the collateral are adequately protected and provided the debtor has more than a minor interest. Bankruptcy Code Section 542.

■ Whether a debtor's interest constitutes property of the estate is a federal question, but the nature and existence of a debtor's right to the collateral in determined by state law. *Southtrust Bank of Alabama v. Thomas (In re Thomas),* 883 F.2d 991, 995 (11th Cir.1989), *cert. denied,* 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990); *See also, In re Southeast Banking Corp.,* 156 F.3d 1114 (11th Cir. 1998). Thus, to determine if the Vehicle is property of the Debtor's bankruptcy estate, or stated differently, whether the Debtor had more than a "minor interest" in the Vehicle on the Petition Date, Florida state law concerning ownership of motor vehicles is applicable.

■ *Ownership of Motor Vehicles under Florida Law.* Two series of Florida statutes control. First, the Florida legislature has enacted a version of the Uniform Commercial Code (the "UCC") governing possession and ownership of goods in general, including motor vehicles. Fla. Stat.

Chp. 679. In addition, Chapter 319 of the Florida Statutes specifically discusses the transfer of title to motor vehicles.

A secured creditor in Florida, unless otherwise agreed, has the right, upon default, to take possession of the secured collateral. Fla. Stat. 679.503. Upon repossession, the secured creditor has the power to dispose of collateral in a number of ways including a public sale or private sale. The creditor also may lease or use the repossessed property under certain conditions. Fla. Stat. 679.504 & 679.505. These statutes apply to secured collateral *generally*, not exclusively motor vehicles.

When a car is at issue, Florida has enacted *specific* legislation addressing ownership, title, and transfer of repossessed motor vehicles. Florida Statute 319.22 provides in pertinent part:

> (1) Except as provided in §§ 319.21 and 319.28, a person acquiring a motor vehicle...shall not acquire marketable title to the motor vehicle...until he or she has had issued to him or her a certificate of title to the motor vehicle...nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title.... Except as otherwise provided herein, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle...sold, disposed of, mortgaged, or encumbered, unless evidenced by a certificate of title duly issued to that person, in accordance with the provisions of this chapter.

The Florida legislature has long recognized strong public policy reasons for controlling the transfer of motor vehicles. A certificate of title issued by the State of Florida is absolutely necessary. For a court to recognize the "right, title, claim, or interest of any person in or to any motor vehicle...sold, disposed of, mortgaged, or encumbered" such person *must* have valid certificate of title issued to them. Fla. Stat. 319.22(1). One relevant exception to this rule is contained in Section 319.28 of the Florida Statutes, which provides in pertinent part:

> (1)(a) In the event of the transfer of ownership of a motor vehicle or mobile home...by repossession is had upon default in performance of the terms of a security agreement...and upon the surrender of the prior certificate of title or, when that is not possible, presentation of satisfactory proof to the department of ownership and right of possession to such motor vehicle...and upon payment of the fee prescribed by law and presentation of an application for certificate of title, the department may issue to the applicant a certificate of title thereto.

> (b) In case of repossession of a motor vehicle or mobile home pursuant to the terms of a security agreement or similar instrument, an affidavit by the party to whom possession has passed stating that the vehicle or mobile home was repossessed upon default in the terms of the security agreement or other instrument shall be considered satisfactory proof of ownership and right of possession. At least 5 days prior to selling the repossessed vehicle, any subsequent lienholder named in the last issued certificate of title shall be sent notice of the repossession by certified mail, on a form prescribed by the department. If such notice is given and no written protest to the department is presented by a subsequent lienholder within 15 days from the date on which the notice was mailed, the certificate of title or the certificate of repossession shall be issued showing no liens. If the **former owner** or any subsequent lienholder files a written protest under oath within such 15–day period, the department shall not issue the certificate of title or certificate of repossession for 10 days thereafter. If within the 10–day period no injunction or other order of a court of competent jurisdiction has been served on the department commanding it not to deliver the certificate of title or certificate of reposses-

sion, the department shall deliver the certificate of title or repossession to the applicant or as may otherwise be directed in the application showing no other liens than those shown in the application. (Emphasis added).

In summary, Title does not transfer to a creditor immediately on repossession. Numerous preliminary steps are required. The creditor must present satisfactory proof in the form of an affidavit to the Department of Highway Safety and Motor Vehicles that the creditor is entitled to ownership and to possession of the car. The creditor must pay the applicable fee. The creditor must give any other lienholders at least 15 days notice prior to requesting a certificate of title. The *former owner*, such as the Debtor in this case, or other lienholder has the ability to file a written protest to the issuance of the certificate of title within the 15 day notice period. If a written protest is filed, a further ten day delay is required to allow the protesting party to obtain a court order enjoining the issuance of the certificate of title. Only after all of these foregoing conditions are met can the creditor with a repossessed vehicle obtain a new certificate of title and conclude a sale of the car.

Certainly, the creditor can arrange to sell the car to an interested buyer prior to following these procedures. The creditor, however, cannot transfer marketable title until a new certificate of title is issued. The former owner maintains an ownership interest in the repossessed car up to the entry of the certificate of title. In other words, a creditor can repossess and sell a

car prior to entry of a new certificate of title, but the former owner is not divested of title or a claim for ownership until the new certificate of title is issued in the name of the creditor or the new purchaser. A creditor's right to sell a repossessed car does not equal complete ownership. The former owner remains the legal owner for title purposes until a new certificate of title is issued. If title transfer was automatic, the provisions in Chapter 319.28 would have no meaning. Until the creditor receives the magic certificate of title, the former owner, as the titleholder, retains a legal ownership interest in the car and can prevent transfer of marketable title.[2]

Chapter 319 of the Florida statutes govern title transfers of motor vehicles. The statute is complimentary but much more specific than Chapter 679 of Florida's version of the UCC. Chapter 679 governs the repossession and sale of the car. Chapter 319 governs issues relating to title transfer. Certainly, Chapter 319 makes title to motor vehicles controlling as to the legal rights of the various parties. Thus, where Florida Statute 679.504 provides for the disposal of repossessed collateral, the statute is modified and enhanced by the requirements of Florida Statute 319.28, which requires certain procedures for effectuating disposal of repossessed motor vehicles.

■ *The Debtor's Interest in the Vehicle.* In Florida, a certificate of title issued in the creditor's name is the shibboleth of ownership. Until the certificate of

---

2. Creditor relies on two cases in support of its position that the Debtor was divested of any interest in the Vehicle upon repossession. *Cooney v. Jacksonville Transportation Authority*, 530 So.2d 421 (Fla. 1st DCA 1988) and *Correria v. Orlando Bank & Trust Co.*, 235 So.2d 20 (Fla. 4th DCA 1970). Both cases are misapplied by the Creditor. *Cooney* only addressed the issue of whether a beneficial owner not named in a proper certificate of title was still liable for negligent operation of a motor vehicle, an issue not even tangentially related to the issue here. *Cooney*, 530 So.2d at 422. *Correria* only buttresses this Court's

conclusion that marketable title does not transfer until a proper certificate of title is issued. *Correria*, 235 So.2d at 24. In that case, the dispute between the bank and the buyer of the car related to which of the two had superior rights to the issuance of a certificate of title. The Fourth District Court of Appeals found *both* parties had some claim to the car but ultimately ruled that the new purchaser had a better claim and was entitled to a certificate of title. Here, both the Debtor and the Creditor have coextensive rights to the Vehicle. The Debtor's interest is not lost until the new certificate of title is issued.

title is issued pursuant to Florida Statute Chapter 319, a secured creditor having repossessed a motor vehicle does not have exclusive ownership of the motor vehicle. The creditor may have rights to the use and possession of the car and the right to seek a certificate of title, but, until the creditor actually receives title in its name or the name of the new purchaser, the former owner retains title and an ownership interest to the motor vehicle. The former owner also retains the right to protest or prevent the issuance of a new title to the secured creditor. Certainly these rights are substantial and constitute an ownership interest that is much more than minor and that survives a filing of a Chapter 13 bankruptcy.

Two recent cases have dealt with the issue of a debtor's interest in a repossessed motor vehicle. *See, In re Lewis,* 211 B.R. 970 (N.D.Ala.1997), *aff'd,* 137 F.3d 1280 (11th Cir.1998); *In re Iferd,* 225 B.R. 501 (Bankr.N.D.Fla.1998). *Lewis* involved a turnover action brought by a debtor pursuant to Bankruptcy Code Section 542(a) seeking the return of a car repossessed before the debtor filed his Chapter 13 petition. The Eleventh Circuit Court of Appeal held that, under *Alabama law,* the debtor was deprived of all ownership interests upon repossession and thus had no interest in the motor vehicle to constitute property of the bankruptcy estate. *Lewis,* 137 F.3d at 1284–85. The debtor's mere right of redemption was not enough. *Id.* Significantly, the Eleventh Circuit held that the Alabama debtor did not have title or any other functionally equivalent ownership interest to the car on the day the bankruptcy was filed. This fact is an important distinction between the case at bar and *Whiting Pools. Lewis,* 211 B.R. at 974.

*Lewis* is not controlling in this case. First, Florida law is clear that the Creditor did not hold title to the Vehicle on the Petition Date because the Creditor had not obtained a new certificate of title prior to the Chapter 13 filing. Second, *Lewis* rests

exclusively upon an analysis of Alabama law that is not applicable in this case and that is very dissimilar from Florida law.

*Iferd,* however, is based on Florida law. The Bankruptcy Court for the Northern District of Florida reasoned that the Florida UCC provisions afford certain rights to the debtor and impose certain duties on the creditor after repossession. *Iferd,* 225 B.R. at 503. As an extension of these corresponding rights and duties, the bankruptcy court found that the debtor retains legal title to the vehicle until at least the time for redemption expires. *Id.* Although this Court gives far more importance to Florida Statute 319.22, and finds that Chapter 319 is concerned with much more than just the mere marketability of title, the result is the same, just reached differently. In both cases, the debtor in a chapter 13 case retains sufficient legal and equitable interest in a repossessed motor vehicle to demand its turnover in a bankruptcy case up to the date the repossessing creditor obtains an appropriate certificate of title.

■ In this case, the Creditor had repossessed the vehicle but had not sought a new certificate of title prior to the Petition Date. As such, the Debtor remained the legal titleholder and retained a sufficient legal interest to include the Vehicle as property of the Debtor's bankruptcy estate. The Debtor may use the Vehicle as long as the Creditor is adequately protected. The Debtor is making regular payments to the Creditor under his Chapter 13 plan to pay the full balance due. The Creditor is adequately protected and has established no cause sufficient to justify any modification of the automatic stay.

*Conclusion.* A creditor does not have exclusive ownership of a repossessed motor vehicle until the former owner's rights are severed by compliance with Florida Statute Chapter 319. The debtor retains legal title in the motor vehicle until the repossessing creditor obtains a new certificate of title. On the Petition Date, Debtor still retained sufficient ownership interest

in the Vehicle for it to constitute part of the bankruptcy estate. The Creditor is adequately protected and has shown no basis to modify the automatic stay. Accordingly, the Motion is denied. A separate order consistent with these Findings of Facts and Conclusions of Law shall be entered.