**In re Farid E. SHUNNARAH and Deanna A. Shunnarah, Debtors.**

No. 01–5524–3P3.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Aug. 16, 2001.

Jennifer E. Blair, Vienna, WV, for debtors.

H. Michael Muniz, for creditor.

Mamie L. Davis, trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon Motion to Compel Turnover of Property filed by Farid and Deanna Shunnarah ("Debtors"), Objection by Health Services Credit Union ("Creditor") to Debtors' Motion to Compel Turnover of Property and Motion for Sanctions against Debtors' Attorneys, Creditor's Motion to Strike Debtors' Amended Motion to Compel Turnover of Collateral and Renewed Motion for Sanctions Against Debtors' Attorney, and Motion for Sanctions Against Creditor filed by Debtors. The Court held a hearing on July 18, 2001. The Court instructed the parties to submit briefs on the threshold issue of whether it is bound by a decision of a district court of the Middle District of Florida. Upon receipt of the briefs, the Court scheduled an evidentiary hearing for August 15, 2001. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Creditor holds a valid perfected security interest in Debtors' 1997 Ford F-150 Truck and 1992 Ford Explorer.

2. On June 11, 2001 Creditor repossessed both vehicles as a result of Debtors' default in payments.

3. On June 12, 2001 Debtors filed for relief under Chapter 13 of the Bankruptcy Code. (Doc. 1.)

4. On June 12, 2001, after the filing of the petition, Jennifer Blair, ("Debtors' attorney"), contacted Delma Hollister, a vice-president in Creditor's loan and collection department. She informed Ms. Hollister that Debtors had filed a bankruptcy petition and that the vehicles should be returned to Debtors. Ms. Hollister indicated that Creditor was represented by counsel. There has been no further direct contact between Debtors' attorney and Creditor. Shortly thereafter, Debtors' attorney contacted Greg Bland, a legal assistant with Creditor's attorney, and informed him of the filing of the petition.

5. On June 13, 2001 Mr. Bland informed Debtors' attorney that Creditor did not intend to return the vehicles to Debtors.

6. On June 14, 2001 Debtors filed Motion to Compel Turnover of Collateral. (Doc. 6.)

7. On July 2, 2001 Creditor filed Objection to Debtors' Motion to Compel Turnover of Collateral and Motion for Sanctions Against Debtors' Attorney. (Doc. 15.)

8. On August 7, 2001 Debtors filed Amended Motion to Compel Turnover of Collateral. (Doc. 29.) The amended motion includes a request for an award of sanctions and attorney's fees for Creditor's willful violation of the automatic stay. On August 7, 2001 Debtors also filed Motion for Sanctions against Creditor's Attorney pursuant to Bankruptcy Rule 9011. (Doc. 30.)

9. On August 13, 2001 Creditor filed Motion to Strike Debtors' Amended Motion to Compel Turnover of Collateral and Renewed Motion for Sanctions Against Debtors' Attorney. (Doc. 33.)

10. The Court held a hearing on August 15, 2001.

11. Mr. Shunnarah testified that he incurred expenses to obtain transportation to work as a result of not having a vehicle. He also testified that Mrs. Shunnarah has been taken to the hospital twice by ambulance. He testified that her health problems have been exacerbated by their lack of transportation and inability to get to the hospital.

12. Debtors' attorney testified that she spent 10–10½ hours in attorney's time on the case.[1]

## CONCLUSIONS OF LAW

Section 541 of the Bankruptcy Code provides that the bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case wherever located and by whomever held." 11 U.S.C. § 541(a)(1). The bankruptcy estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition. *United States v. Whiting Pools*, 462 U.S. 198, 208, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The question of whether a debtor's interest is property of the estate is a federal question, but the "nature and existence of the debtors' right

to property is determined by looking at state law." *Southtrust Bank of Alabama v. Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir.1989). Debtors argue that a vehicle repossessed pre-petition is property of the bankruptcy estate and is subject to turnover pursuant to 11 U.S.C. §§ 542 and 1303. Relying on *Bell–Tel Credit Union v. Kalter (In re Kalter)*, 257 B.R. 93 (M.D.Fla.2000), Creditor argues that a vehicle repossessed pre-petition is not property of the bankruptcy estate. Initially, the Court must determine whether it is bound by *Kalter*.

## I. THE KALTER DECISION AND ITS PRECEDENTIAL EFFECT

### A. The Rule of Kalter

In *Kalter* the creditor held a perfected security interest in the debtors' vehicle. Prior to the filing of the debtors' bankruptcy petition, the creditor repossessed the vehicle. The bankruptcy court found that the vehicle was property of the estate and granted the debtors' emergency motion for turnover of the vehicle. The creditor appealed to the district court. Relying upon § 319.28 of the Florida Statutes which deals with the transfer of ownership of a motor home or motor vehicle by operation of law, the court concluded that title to the vehicle passed to the creditor upon repossession, making the debtors nothing more than the "former owners" of the vehicle.[2] Accordingly, the court held that the vehicle was not part of the debtors' estate on the date of the filing of their

---

1. Debtor's attorney testified that she spent 3 hours preparing the brief, 2 hours researching for the brief, 1 hour reviewing Creditor's brief, 15 minutes reviewing Creditor's supplemental brief, 30 minutes preparing a supplemental brief, 30 minutes preparing the Motion for Sanctions, and 30 to 45 minutes preparing Motion to Strike Notice of Supplemental Authority.

2. Although *Kalter* cites to § 319.28(1)(b), the text to which the court refers is actually that

of § 319.28(2)(b). Section 319.28(2)(b) provides as follows:

> In case of repossession of a motor vehicle or mobile home pursuant to the terms of a security agreement or similar instrument, an affidavit by the party to whom possession has passed stating that the vehicle or mobile home was repossessed upon default in the terms of the security agreement or other instrument shall be considered satisfactory proof of ownership and right of

bankruptcy petition and denied the motion for turnover.[3]

## B. The Precedential Effect of a Decision of the District Court for the Middle District of Florida on this Court

 There has been much debate as to whether bankruptcy courts are bound by the doctrine of stare decisis to follow the decision of a single district court in a multi-judge district. The leading argument in support of the notion that bankruptcy courts are not so bound is that bankruptcy courts operate as a unit on the district court but on an equal level. *See In re Shattuc Cable Corp.*, 138 B.R. 557, 565 (Bankr.N.D.Ill.1992). "Although the district court does hold appellate jurisdiction, it is not a 'higher court' in the sense that the Supreme Court or the courts of appeal are higher courts." *Id.* Additionally, because district judges are not bound by other district court decisions in a multi-judge district, there is no "law of the district." *Threadgill v. Armstrong World Indus., Inc.* 928 F.2d 1366, 1371 (3d Cir. 1991). Bankruptcy courts are not bound

by a single district court decision that would not be binding on the district court as a whole. *First of America Bank v. Gaylor,* 123 B.R. 236, 242 (Bankr. E.D.Mich.1991). *But see Irr Supply Centers, Inc. v. Phipps,* 217 B.R. 427, 431–432 (holding that bankruptcy court is bound by a published district court decision in a multi-judge district).

The Court holds that the doctrine of stare decisis does not compel it to follow a decision of a single district court in a multi-judge district. *See also Baker v. Health Serv. Credit Union (In re Baker),* 264 B.R. 759 (Bankr.M.D.Fla.2001) citing *Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 160 B.R. 882, 898 (Bankr.S.D.N.Y.1993). Having found that it is not bound by *Kalter,* the Court must independently determine whether a vehicle repossessed pre-petition is property of the bankruptcy estate.

## II. IS A VEHICLE REPOSSESSED PRE-PETITION PROPERTY OF THE BANKRUPTCY ESTATE?

 In *Charles R. Hall Motors v. Lewis (In re Lewis),* 137 F.3d 1280 (11th Cir.

possession. At least 5 days prior to selling the repossessed vehicle, any subsequent lienholder named in the last issued certificate of title shall be sent notice of the repossession by certified mail, on a form prescribed by the department. If such notice is given and no written protest to the department is presented by a subsequent lienholder within 15 days from the date on which the notice was mailed, the certificate of title or the certificate of repossession shall be issued showing no liens. If the former owner or any subsequent lienholder files a written protest under oath within such 15-day period, the department shall not issue the certificate of title or certificate of repossession for 10 days thereafter. If within the 10-day period no injunction or other order of a court of competent jurisdiction has been served on the department commanding it not to deliver the certificate of title or certificate of repossession, the department shall deliver the certificate of title or repossession to the applicant or as

may otherwise be directed in the application showing no other liens than those shown in the application. Any lienholder who has repossessed a vehicle in compliance with the provisions of this section may apply to the tax collector's office or to the department for a certificate of repossession or to the department for a certificate of title pursuant to s. 319.323. Proof of the required notice to subsequent lienholders shall be submitted together with regular title fees. A lienholder to whom a certificate of repossession has been issued may assign the certificate of title to the subsequent owner. Any person found guilty of violating any requirements of this paragraph shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

3. *Kalter* is currently on appeal to the Eleventh Circuit Court of Appeals.

1998) the Eleventh Circuit addressed the issue of whether an automobile repossessed prior to the filing of the debtors' bankruptcy petition was property of the estate. Applying Alabama's common law of conversion rather than the Uniform Commercial Code, the court found that the only ownership interest retained by the debtor was a right of redemption. The court concluded that the debtor's mere right to redeem the automobile, without more, was insufficient to render the automobile property of the estate. "[O]ne must take certain affirmative steps to change the otherwise dormant right to redeem repossessed collateral into a meaningful ownership interest." *Id.* at 1284. The court concluded that the debtors' proposal to pay 62 cents on the dollar to retain the automobile was insufficient to transform the "bare" right to redeem into an ownership interest sufficient to render the automobile property of the estate.

Prior to the district court decision in *Kalter*, the bankruptcy court from which *Kalter* originated addressed the issue of whether a vehicle repossessed pre-petition was property of the estate. *In re Chiodo*, 250 B.R. 407 (Bankr.M.D.Fla.2000). The Court noted that § 319.22 of the Florida Statutes requires the issuance of a certificate of title to effectuate the transfer of a motor vehicle and to confer marketable title. The court recognized the exception embodied by § 319.28(2)(b), which enables a creditor to repossess and even sell a vehicle prior to the issuance of a new certificate of title. However, the court concluded that title does not transfer to a creditor immediately upon repossession; numerous preliminary steps are required. *Id.* at 411. "Until the creditor receives the magic certificate of title, the former owner, as the titleholder, retains a legal ownership interest in the car and can prevent transfer of marketable title." *Id.* at 410.[4] The court concluded that a "former owner's retention of title and ability to prevent the issuance of a new title to the secured creditor, constitute ownership interests sufficient to render the vehicle property of the estate." *Id.* at 412–413.[5]

The Court respectfully disagrees with the district court decisions in *Kalter* and *Chiodo*. The Court is not persuaded by *Kalter's* reliance on the "former owner" language in § 319.28 as support for its holding that repossession alone causes title and ownership to pass to the repossessing creditor. Such a holding renders the procedural protections contained in § 319.28 meaningless. *In re Ratliff*, 260 B.R. 526, 530 (Bankr.M.D.Fla.2000). "[W]hy should a creditor go through the bother of erasing a debtor's ownership interest from a vehicle's title via § 319.28 when the debtor's ownership interest was extinguished by repossession?" *Id.* The Court agrees with the *Chiodo* bankruptcy court's holding that a debtor retains an ownership interest sufficient to constitute property of the estate in a repossessed vehicle until the repossessing creditor obtains a new certificate of title pursuant to Fla.Stat. § 319.28. Additionally, the Court finds that Lewis does not control. *See Chiodo*, 250 B.R. at 412.

**4.** The court noted that *Lewis* was not controlling because the creditor had not obtained a new certificate of title prior to the Chapter 13 filing and therefore did not hold title on the petition date. Additionally, the court noted that Alabama law did not apply.

**5.** The *Chiodo* case was appealed to the same district court which decided *Kalter*. Following the reasoning set forth in Kalter, the district court reversed and remanded to the bankruptcy court. *Tidewater Finance Co. v. Chiodo*. No. 6:00–CV0396–3A06–JGG (M.D.Fla. May 30, 2001).

## III VIOLATION OF THE AUTOMATIC STAY, MOTIONS FOR SANCTIONS, AND CREDITOR'S MOTION TO STRIKE DEBTOR'S AMENDED MOTION TO COMPEL TURNOVER OF PROPERTY

### A. Violation of the Automatic Stay

 The automatic stay operates to enjoin a creditor from attempting to possess or exercise control over property of a bankruptcy estate once a petition has been filed. 11 U.S.C. § 362 (2001). Section 362(h) provides that an individual injured by a willful violation of the automatic stay shall recover actual damages, including costs and attorney's fees. Debtors contend that they are entitled to damages and attorney's fees as a result of Creditor's refusal to return the vehicles after the filing of the petition. The Court finds that Creditor's refusal to return the vehicles after the filing of the petition is a willful violation of the automatic stay. However, the Court finds Mr. Shunnarah's testimony as to actual damages insufficient to warrant an award of damages. The Court finds that Debtors are entitled to damages for attorney's fees in the amount of $875.00 [6]

### B. Motions for Sanctions

 Creditor requests the imposition of sanctions against Debtors' attorney because Debtors' attorney contacted Creditor directly despite her knowledge that Creditor was represented by the same firm in a prior bankruptcy case. Additionally, Creditor contends that Debtors' Motion to Compel in the face of "precedential controlling authority in this jurisdiction" could not have been "genuinely filed" and is a violation of Bankruptcy Rule 9011.[7] The Court declines to impose sanctions against Debtors' attorney. The Court finds that Creditor did not suffer any harm as a result of being contacted directly by Debtors' attorney. Additionally, the Court finds that Debtors' attorney's belief that the vehicles were property of the bankruptcy estate when she filed the Motion to Compel Turnover of Collateral was reasonable in light of Judge Funk's decision in *In re Ratliff*, 260 B.R. 526, 530 (Bankr. M.D.Fla.2000) which held that pursuant to Florida's motor vehicle title statute, title to a repossessed car remains in the debtor until the vehicle is sold and a new certificate of title is issued. Accordingly, the Court does not find that the filing of the Motion to Compel Turnover violates Rule 9011.

---

**6.** The $875.00 represents five hours at an hourly rate of $175.00.

**7.** Federal Rule of Bankruptcy Procedure 9011 provides that any Complaint filed with the bankruptcy court must be signed, warranted by existing law, and for a proper purpose: (b) REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
Fed.R.Bankr.P 9011(b)

 Debtors request the imposition of sanctions against Creditor's attorney. Debtors assert that Creditor's contention that the Motion to Compel Turnover was not genuinely filed is itself not genuine in light of the fact that Creditor's attorney was aware of case law in the Middle District of Florida supporting Debtors' position that the vehicles are property of the estate. However, Creditor's position that the *Kalter* decision is binding upon this Court, while incorrect, was not unreasonable. Accordingly, the Court declines to impose sanctions against Creditor's attorney.

## C. Creditor's Motion to Strike Debtors' Amended Motion to Compel

Finally, Creditor contends that Debtors' Amended Motion to Compel Turnover of Collateral should be stricken because Debtors failed to seek leave of court to amend their motion as required by Federal Rule of Civil Procedure 15.[8] The court finds it appropriate to deny Creditor's Motion to Strike because Creditor did not satisfy its burden of proving that leave should not have been granted.

## CONCLUSION

Because Creditor did not obtain a new certificate of title pursuant to Fla.Stat. § 319.28 prior to the filing of Debtors' bankruptcy petition, Debtors retained an ownership interest in the vehicles suffi-

cient to render them property of the estate under § 541 of the Bankruptcy Code. Accordingly, the Court will grant Debtors' Motion for Turnover. Creditor's failure to return the vehicles constitutes a willful violation of the automatic stay for which Debtors' are entitled to attorney's fees. Neither Debtors' attorney's direct contact with Creditor's representative nor the filing of the Motion to Compel Turnover warrant the imposition of sanctions. Creditor's request that sanctions be imposed against Debtor's attorney does not itself warrant the imposition of sanctions. The Court will therefore deny Motion for Sanctions against Debtor's attorney and Motion for Sanctions against Creditor's attorney. Finally, because Creditor did not satisfy its burden of proving that Debtors should not have been granted leave to file Amended Motion to Compel Turnover of Collateral, the Court will deny Creditor's Motion to Strike. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

---

8. Rule 15 provides in pertinent part:

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders. Fed.R.Civ.P. 15(a)