**In re David J. GARCIA, Debtor.**

**No. 01–28479–BKC.**

United States Bankruptcy Court, S.D. Florida.

April 1, 2002.

Richard L. Freedman, Esq., Ft. Lauderdale, FL, for debtor.

Carlos L. De Zayas, Esq., Coconut Grove, FL, for creditor.

---

## MEMORANDUM DECISION AND ORDER GRANTING DEBTOR'S MOTION FOR TURNOVER OF VEHICLE

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS MATTER** came before the Court on December 7, 2001 upon David J. Garcia's (the "Debtor") Motion for Turnover of Vehicle (the "Motion"). This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

### FINDINGS OF FACT

On August 9, 2001, the Debtor purchased a 1995 Kenworth W900 Truck (the "Vehicle") for approximately $48,000. The Debtor received financing for the purchase of the Vehicle from World Investment Corporation (the "Creditor"). After the Debtor failed to make the required payments under the financing agreement, on November 13, 2001 the Creditor instituted an action for replevin in the state circuit court. A writ of replevin was issued, and the Sheriff of Miami–Dade County seized the Vehicle at 10:00 a.m. on November 16, 2001. Upon seizing the Vehicle, the Sheriff turned the Vehicle over to the Creditor pursuant to the order of the state court judge. Later that same day, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.

The Debtor's attorney, Richard L. Freedman, made request upon the Creditor to return the Vehicle to the Debtor. This request was formalized by letter on November 27, 2001. The Creditor, through its attorney, Carlos de Zayas, responded with a letter of refusal on November 28, 2001. On December 7, 2001, the Debtor filed the instant Motion before the Court.

On January 24, 2002, the Debtor filed a Memorandum in Support of Motion for Turnover of Vehicle. In his legal memorandum, the Debtor asserts that upon the filing of a bankruptcy petition, a debtor whose vehicle has been repossessed, but not yet sold or otherwise disposed of, is entitled to regain possession of that vehicle. On February 12, 2002, the Creditor filed a Memorandum of Law in Opposition to Motion for Turnover of Vehicle. Relying on Judge Friedman's recent decision in *In re Ragan*, 264 B.R. 776 (Bankr.S.D.Fla. 2001), the Creditor argues that title had passed to the Creditor upon replevy, and therefore the Debtor has no remaining

legal interest in the Vehicle. The Creditor argues further that even if the Court were to determine that the Debtor did have an interest in the Vehicle, and therefore the Vehicle is property of the estate, the Debtor should not prevail in the instant Motion because he is not affording the Creditor with adequate protection.

## CONCLUSIONS OF LAW

### I. A Debtor Retains a Significant Ownership Interest in a Vehicle That has Been Repossessed Pre–Petition.

The Creditor relies on the recent decision of *In re Ragan*, 264 B.R. 776 (Bankr. S.D.Fla.2001) for the proposition that under Florida law, a debtor no longer has title to, or ownership of, a vehicle that has been repossessed pre-petition. The Creditor argues that upon repossession a debtor retains merely a right of redemption in the vehicle which is insufficient to constitute property of the estate.

The facts in *Ragan* are quite similar to the facts in the case *sub judice*. The debtor filed a voluntary Chapter 13 petition on June 30, 2001. Shortly thereafter, the debtor filed a motion seeking the turnover of her 1998 BMW 318I automobile from South Florida Education Federal Credit Union ("FCU"). The BMW was repossessed by FCU prior to the petition date. In its ruling, the court found that the automobile was not property of the estate under 11 U.S.C. § 541(a)(1). Specifically, the court held that "under Florida law, pre-petition repossession of a motor vehicle by a secured creditor divests the debtor of all rights and interest in such vehicle, with the exception of a right of redemption." As such, the debtor's motion for turnover of the vehicle was denied.

In *Ragan*, the court bases its opinion on the Eleventh Circuit Court of Appeals decision in *Charles R. Hall Motors, Inc. v.*

*Lewis (In re Lewis)*, 137 F.3d 1280 (11th Cir.1998) and the district court's holding in *Bell–Tel Fed. Credit Union v. Kalter (In re Kalter)*, 257 B.R. 93 (M.D.Fla.2000). The facts in *Lewis* are virtually identical to the facts in *Ragan;* that is, a defaulting debtor whose vehicle had been repossessed pre-petition sought to recover possession of the vehicle post-petition. *In re Lewis*, 137 F.3d at 1281. The bankruptcy court in *Lewis* found in favor of the debtor, determining that under Alabama law, the debtor retained both the title and a right of redemption in the repossessed automobile. *Id.* at 1282. The district court reversed, finding that the debtor retained only a right of redemption, and that as such, the automobile did not constitute property of the estate. *Id.* In affirming the district court ruling, the Eleventh Circuit noted that the nature and existence of a debtor's right to property is determined by looking to state law. *Id.* at 1283. The Eleventh Circuit further observed that under Alabama's version of Article 9 of the Uniform Commercial Code, the debtor "did not retain title, possession or any other functionally equivalent ownership interest in the repossessed automobile ... [but rather, merely] retained a right of redemption pursuant to Ala.Code § 7–9–506." *In re Lewis*, 137 F.3d at 1284. The Eleventh Circuit concluded that any right to claim possession and ownership of the automobile, short of the debtor's right of redemption, was lost when the secured creditor took possession, and thus, the debtor had insufficient interest in the vehicle to render it property of the estate under § 541(a)(1) or subject it to turnover under § 542(a). *See id.* at 1285.

It is important to point out that the decision in *Lewis* was decided under Alabama law, rather than Florida law. Furthermore, the court notes that Alabama's version of Article 9 relies heavily on the common law of conversion. *See Lewis*, 137

F.3d at 1284 (stating that "[b]eing unable to locate any authority to the contrary, we find significant the state courts' continued reliance on the common law of conversion after the Alabama legislature adopted the U.C.C. in 1965.") Unlike Alabama, Florida has a specific set of statutes which deal with the titling of motor vehicles. *See* Fla. Stat. Ann. §§ 319.22–.29 (2000). As such, the opinion in *Lewis* is distinguishable from the case at bar.

In *In re Kalter*, the District Court for the Middle District of Florida found that the law enunciated in the *Lewis* decision is applicable to interpretation of Florida law. *See In re Kalter*, 257 B.R. at 96. In so ruling, the district court found particular support in the language of Florida Statute § 319.28(1)(b) referring to the party from whom the vehicle has been repossessed as the "former owner." *See id.* The court concluded that under Florida Statute § 319.28, the act of repossession causes ownership of a motor vehicle to pass, regardless of the fact that formal title to the vehicle is not transferred pursuant to Florida Statutes §§ 319.22, .23, or .28. *See id.* at 97.

Aside from the rulings in *Ragan* and *Kalter*, a line of cases from the Middle District of Florida have developed holding that a debtor *does* retain an ownership interest in a vehicle that has been repossessed pre-petition, such that the vehicle should be included in property of the estate. *In re Shunnarah*, 268 B.R. 657, 662 (Bankr.M.D.Fla.2001); *Baker v. Health Serv. Credit Union (In re Baker)*, 264 B.R. 759, 763–64 (Bankr.M.D.Fla.2001); *In re Ratliff*, 260 B.R. 526, 530 (Bankr. M.D.Fla.2000); *In re Chiodo*, 250 B.R. 407, 412 (Bankr.M.D.Fla.2000). Respectfully, this Court disagrees with the holdings in *Ragan* and *Kalter*; the Court finds the holdings in the line of cases beginning with *Chiodo* more persuasive.

At the crux of this dispute is Florida Statutes § 319.28 which deals with the transfer of ownership of a motor vehicle. Section 319.28(1)(a) provides in pertinent part as follows:

In the event of the transfer of ownership of a motor vehicle or mobile home by operation of law as upon inheritance, . . . *replevin*, . . . or *repossession* is had upon default in performance of the terms of a security agreement, . . . and upon the surrender of the prior certificate of title or, when that is not possible, presentation of satisfactory proof to the department of ownership and right of possession to such motor vehicle or mobile home, . . . the department may issue to the applicant a certificate of title thereto.

Fla. Stat. § 319.28(1)(a) (1999)(emphasis added). Also at issue, § 319.28(2)(b) states in relevant part that:

In case of repossession of a motor vehicle or mobile home pursuant to the terms of a security agreement or similar instrument, an affidavit *by the party to whom possession has passed* stating that the vehicle or mobile home was repossessed upon default in the terms of the security agreement or other instrument shall be considered satisfactory proof of ownership and right of possession. At least 5 days prior to selling the repossessed vehicle, any subsequent lienholder named in the last issued certificate of title shall be sent notice of the repossession by certified mail, on a form prescribed by the department. If such notice is given and no written protest to the department is presented by a subsequent lienholder within 15 days from the date on which the notice was mailed, the certificate of title or the certificate of repossession shall be issued showing no liens. If the *former owner* or any subsequent lienholder files a written protest

under oath within such 15–day period, the department shall not issue the certificate of title or certificate of repossession for 10 days thereafter. If within the 10–day period no injunction or other order of a court of competent jurisdiction has been served on the department commanding it not to deliver the certificate of title or certificate of repossession, the department shall deliver the certificate of title or repossession to the applicant or as may otherwise be directed in the application showing no other liens than those shown in the application. Any lienholder who has repossessed a vehicle in compliance with the provisions of this section may apply to the tax collector's office or to the department for a certificate of repossession or to the department for a certificate of title pursuant to s. 319.323. Proof of the required notice to subsequent lienholders shall be submitted together with regular title fees. A lienholder to whom a certificate of repossession has been issued may assign the certificate of title to the subsequent owner. Any person found guilty of violating any requirements of this paragraph shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 319.28(2)(b) (1999)(emphasis added).

■ The Creditor argues that the language of § 319.28 is clear, and therefore the Court should not engage in statutory construction. The Creditor asserts that the "former owner" language of § 319.28(2)(b) indicates the legislature's intent for the passage of substantive rights to be self-executing. Additionally, the Creditor argues that the plain language of § 319.28(1)(a) suggests that a judicial replevin order constitutes a transfer of ownership by operation of law. This Court

has stated in the past that "when the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Bakst v. WRH Mortgage, Inc. (In re Jackie Johns, DMD, P.A.)*, 267 B.R. 901, 905 (Bankr.S.D.Fla.2001)(quoting *Hott Interiors, Inc. v. Fostock*, 721 So.2d 1236, 1238 (Fla. 4th DCA 1998)). In this Case, however, the language of the statute is not clear. The fact that the statute refers to the debtor as being the "former owner" is not dispositive.

■ Under this Court's interpretation of Florida law, a debtor's ownership interest in a repossessed vehicle survives until a new certificate of title has been issued pursuant to § 319.28. If a new certificate of title to a repossessed vehicle is not issued by the petition date, then the surviving ownership interest is property of a debtor's bankruptcy estate. *In re Baker*, 264 B.R. at 763. In *Joshua v. City of Gainesville*, 768 So.2d 432 (Fla.2000) the Florida Supreme Court made it clear that a court should not blindly follow statutory language in derogation of common sense. *Id.* at 435. One rule of statutory construction requires that "sections of a statute be considered together and interpreted in such a way as to bring them in harmony with one another." *Meeks v. Florida Power & Light Co.*, — So.2d —, —, 2002 WL 440384, at *5 (Fla. 5th DCA Mar.22, 2002). However, another rule of statutory construction requires the court to construe statutes "as to avoid an unreasonable or absurd result." *Allstate Ins. Co. v. Rush*, 777 So.2d 1027, 1032 (Fla. 4th DCA 2000). To hold that a debtor is divested of all ownership rights prior to the issuance of a new certificate of title would render

§ 319.28 "superfluous and ineffective." *In re Baker*, 264 B.R. at 764.

 Florida Statutes § 319.28 is poorly drafted. Section 319.28(1)(a) presupposes that there has already been a transfer of ownership. Nowhere in Florida law, however, does it state that a transfer of ownership occurs before the procedure for the issuance of a new certificate of title has been followed. Section 319.28 functions as a procedural safeguard for a debtor's ownership interest in a vehicle that has been repossessed. *See id.* "Only after all of [the § 319.28] conditions are met can the creditor with a repossessed vehicle obtain a new certificate of title and conclude a sale of the car." *Id.* (quoting *Chiodo*, 250 B.R. at 411.)

> The fact that the Florida legislature chose to provide such post-repossession procedural protection indicates that the legislature assumed that a debtor holds a property interest in a vehicle under Florida law subsequent to its repossession. "The former owner maintains an ownership interest in the repossessed car up to the entry of the [new] certificate of title."

*Id.* (quoting *Chiodo*, 250 B.R. at 411.)

The Court is even less persuaded by the argument that the "former owner" language of § 319.28(2)(b) is indicative of a transfer in ownership. "The Florida legislatures unfortunate choice of the phrase 'former owner' to describe a debtor whose vehicle is repossessed does not alone justify ignoring the assumptions and intent behind § 319.28." *Id.*

 The Creditor also argues that judicial replevin is somehow treated legally different than self-help repossession under § 319.28(1)(a). The Court finds no support for this argument. A plain reading of § 319.28(1)(a) reveals that replevin and repossession are considered of equal significance when determining when a certificate of title may be issued to a creditor. As noted correctly in the Debtor's Memorandum of Law, "both a replevin and a repossession are indicated as being the initial step in the acquisition of the desired transfer of title. Neither a replevin nor a repossession serves, in and of itself, as the transfer of title."

 The Court concludes that, under Florida law, the Debtor maintained a significant ownership interest in the Vehicle on the petition date despite the pre-petition replevy by the Creditor. The Creditor did not carry out the essential steps necessary to erase the Debtor's ownership interest from the Vehicle prior to the bankruptcy filing. Accordingly, the Vehicle is property of the Debtor's bankruptcy estate under § 541 and the Creditor must turn over the Vehicle.

## II. The Creditor's Assertion that it is Entitled to Adequate Protection is Misplaced.

The Creditor's final argument against turnover of the Vehicle is that it has not been afforded adequate protection. The Creditor asserts that the Debtor has elected to pay the Creditor $12,500, over five years, for a vehicle which the Debtor purchased and financed for $48,000 only three months pre-petition.

 How adequate protection is provided, how much protection is provided, and the means by which it is determined whether the protection is adequate may arise in several different ways. One of the grounds for relief from the automatic stay is the lack of adequate protection of an interest in property. 11 U.S.C. § 362(d)(1). A request for relief from the automatic stay alleging lack of adequate protection is made by motion. Fed. R.

Bankr.P. 4001.[1] In the context of the use of property, a party with an interest in the property, such as a creditor with a lien on the property, may request under § 363(e) that continued use of property be conditioned on the provision of adequate protection of the party's interest. *See In re Continental Airlines, Inc.*, 146 B.R. 534 (Bankr.D.Del.1992). Such a request is also made by motion under Bankruptcy Rule 4001.

In the present case, the Creditor is using lack of adequate protection defensively, as a reason for withholding property of the Debtor's bankruptcy estate. This tactic is procedurally improper. If the Creditor wishes to re-raise an alleged lack of adequate protection properly, it may do so in a later filed motion for relief from stay, or motion to condition continued use of estate property.

### ORDER

In light of the foregoing, and with the Court being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that:

1. The Debtor's Motion for Turnover of Vehicle is **GRANTED**.

2. The Vehicle shall be turned over to the Debtor forthwith.

---

**1.** Federal Rule of Bankruptcy Procedure 4001(a)(1) provides:

> A motion for relief from an automatic stay provided by the Code or a motion to prohibit or condition the use, sale, or lease of property pursuant to § 363(e) shall be made in accordance with Rule 9014 and shall be served on any committee elected pursuant to § 705 or appointed pursuant to § 1102 of the Code or its authorized agent, or, if the case is a chapter 9 municipality case or a chapter 11 reorganization case and no committee of unsecured creditors has been appointed pursuant to § 1102, on the creditors included on the list filed pursuant to Rule 1007(d), and on such other entities as the court may direct.
Fed. R. Bankr.P. 4001(a)(1).